UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MARIO PENALOZA-TREJO,<br><br>　　　　　　　Movant,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Respondent. | CIV. 16-5012-JLV<br><br>ORDER |

**INTRODUCTION**

On August 20, 2014, movant Mario Penaloza-Trejo pled guilty to illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326(a). (CR. Docket 19).[1] The court sentenced Mr. Penaloza-Trejo to 57 months of imprisonment, which constituted the bottom end of his sentencing guidelines imprisonment range. (CR. Dockets 31 at ¶ 63 & 35). On February 2, 2016, Mr. Penaloza-Trejo filed the present motion under 28 U.S.C. § 2255. (Docket 1). He asks the court to vacate its judgment and resentence him under <u>Johnson v. United States</u>.[2] <u>Id.</u> at p. 12. Pursuant to the court's standing order of November 19, 2015, the Office of the Federal Public Defender entered an appearance in this case as Mr. Penaloza-Trejo's counsel. The government opposes Mr. Penaloza-Trejo's motion. (Docket 4). Following two stays

---

[1]Mr. Penaloza-Trejo's criminal case may be found at this court's docket number CR. 14-50070. The court will cite to documents filed in the criminal case as "(CR. Docket ___)".

[2]135 S. Ct. 2551 (2015).

requested by Mr. Penaloza-Trejo to await the outcome of potentially determinative Supreme Court cases, see Dockets 8, 9, 11 & 12, the parties submitted supplemental briefing. (Dockets 17 & 18). For the reasons given below, the court denies Mr. Penaloza-Trejo's motion and declines to issue a certificate of appealability.

## DISCUSSION

### I. Facts & Procedural History

On July 23, 2014, Mr. Penaloza-Trejo was arrested on a federal criminal complaint alleging he illegally reentered the United States following deportation. An Immigration and Customs Enforcement agent stated in an affidavit that Mr. Penaloza-Trejo came into contact with law enforcement in Rapid City, South Dakota, and that he had been deported to Mexico three times, in 2001, 2004, and 2011. (CR. Docket 1-1 at pp. 1-2). A grand jury indicted Mr. Penaloza-Trejo on August 13 and he pled guilty on August 22. (CR. Dockets 17 & 26).

The United States Probation Office ("Probation") prepared a Presentence Investigation Report ("PSR") regarding Mr. Penaloza-Trejo's offense. (CR. Docket 31). Probation reported defendant was convicted of two drug offenses in Washington state in 1994. Id. at ¶ 31. The PSR describes the offenses as "Manufacture/Deliver Schedule 1 or 2 Controlled Substance (felony)" and "Possess with Intent to Distribute Schedule 1 or 2 Controlled Substance (felony)". Id. According to the PSR, Mr. Penaloza-Trejo sold an undercover law

enforcement officer "$30 worth of heroin" and dropped a second bag "containing heroin".  Id.  After being "found guilty of both counts[,]" Mr. Penaloza-Trejo was sentenced to 60 months imprisonment on each count, running concurrently.  Id.  The description of these offenses does not state how much heroin Mr. Penaloza-Trejo sold or possessed.  It also does not state the Washington statutes of conviction.

Probation assigned Mr. Penaloza-Trejo a 16-level increase in his guidelines imprisonment range because of his 1994 drug convictions.  Id. at ¶ 15.  Probation applied the increase pursuant to the 2014 version of U.S.S.G. § 2L1.2, which increased the base offense level for illegal reentry by 16 levels if the defendant had been convicted of a "drug trafficking" felony "for which the sentence imposed exceeded 13 months[.]"[3]  U.S.S.G. § 2L1.2(b)(1)(A)(i) (2014).  The application notes defined a drug trafficking offense as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 2L1.2, comment. (n.1(B)(iv)) (2014).  Mr. Penaloza-Trejo did not object to this enhancement.  Largely based on the enhancement and his extensive criminal history, the PSR calculated Mr. Penaloza-Trejo's guideline

---

[3]In 2016, the United States Sentencing Commission amended this guideline to remove the 16-level increase because it was "overly severe[.]"  U.S. Sentencing Comm'n, Amendment 802 (Nov. 1, 2016), available at https://www.ussc.gov/guidelines/amendment/802 (last visited June 11, 2019).

3

range of imprisonment at 57 to 71 months. (CR. Docket 31 at ¶ 63). The court sentenced Mr. Penaloza-Trejo to 57 months of custody on December 4. (CR. Docket 35). Mr. Penaloza-Trejo did not appeal.

Mr. Penaloza-Trejo filed the present § 2255 motion *pro se* on February 6, 2016. (Docket 1). He first argued his sentence was improperly enhanced because his Washington drug trafficking offense was considered a "crime of violence" under the Immigration and Naturalization Act's ("INA") aggravated felony provisions. (Docket 1-1 at p. 1). Johnson v. United States, in Mr. Penaloza-Trejo's view, forbade using the unconstitutionally vague term "crime of violence" to enhance his sentence. Id. at pp. 1-3. In the motion, Mr. Penaloza-Trejo summarily states he did not appeal his conviction because "counsel was ineffective." (Docket 1 at p. 5). He does not raise any other ineffective assistance of counsel claim in the remainder of the motion or in any other briefing.

The court ordered the government to respond. (Docket 3). It notes Johnson declared the "residual clause" of the Armed Criminal Career Act ("ACCA") unconstitutional and argues Mr. Penaloza-Trejo was not sentenced under that statute. (Docket 4 at pp. 4-8). The Office of the Federal Public Defender, acting as Mr. Penaloza-Trejo's counsel, filed a reply brief, asserting Johnson necessarily invalidated the residual clause used in U.S.S.G. § 4B1.2, which, in its view, applied to Mr. Penaloza-Trejo's sentence. (Docket 5 at pp. 2-5). Mr. Penaloza-Trejo then moved to stay resolution of his motion to

4

await the outcome of Beckles v. United States, 137 S. Ct. 886 (2017), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018). (Dockets 8 & 11). While his case was stayed, Mr. Penaloza-Trejo filed a *pro se* brief asserting the application of the 16-level increase violated his constitutional right to due process because his Washington drug convictions were not "drug trafficking" offenses under the definition provided in U.S.S.G § 2L1.2. (Docket 13).

On April 24, 2018, Mr. Penaloza-Trejo moved to lift the stay. (Docket 14). The court granted his motion and ordered the parties to file supplemental briefing addressing the legal issues in the case. (Docket 16). In that round of briefing, Mr. Penaloza-Trejo, via his counsel, argued the only remaining issue is whether the 16-level increase he received was based on the INA's penalty for aggravated felons convicted of a crime of violence. (Docket 17 at pp. 1-2). The government contends Mr. Penaloza-Trejo was sentenced as an aggravated felon because of his drug convictions, not under the INA's crime of violence provision. (Docket 18 at pp. 1-2).

## II. Legal Standard

The court must grant Mr. Penaloza-Trejo's motion if it finds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). When "jurisdictional and constitutional errors" are not at issue, "the permissible scope of a § 2255

5

collateral attack on a final conviction or sentence is severely limited; an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (internal quotation omitted). "An unlawful or illegal sentence is one imposed without, or in excess of, statutory authority." Id. at 705.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations omitted). "[A] petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction." Jennings v. United States, 696 F.3d 759, 762 (8th Cir. 2012). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." Bousley, 523 U.S. at 622 (internal quotations and citations omitted).

"The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986).

> [T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, we discern no inequity in requiring him to bear the risk of attorney error that results in a

procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts[.]"

Id. at 488. "If a prisoner fails to demonstrate cause, the court need not address prejudice." Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).

## III. Analysis

### A. Application of Johnson & Dimaya

The Supreme Court's holdings in these two cases do not entitle Mr. Penaloza-Trejo to § 2255 relief.[4] In Johnson, the Court held the ACCA's residual clause is unconstitutionally vague. 135 S. Ct. at 2557. The ACCA's residual clause provided for enhanced penalties if a defendant had been convicted of three or more felonies "involv[ing] conduct that presents a serious potential risk of physical injury to another." Id. at 2255-56 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). In Dimaya, the Court held the residual clause of the definition of crime of violence used throughout federal law is unconstitutionally vague. 138 S. Ct. at 1223. The crime of violence residual clause, as used in the INA's definition of aggravated felony, provided for enhanced illegal reentry penalties if a defendant had been convicted of "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property or another may be used in the course of committing the offense." 18 U.S.C. § 16(b).

---

[4]Mr. Penaloza-Trejo conceded Beckles does not support his claim. (Docket 17 at p. 1).

Johnson does not apply to Mr. Penaloza-Trejo's conviction. Mr. Penaloza-Trejo pled guilty to illegal reentry, which is not subject to the ACCA's enhanced penalties. (CR. Docket 19). Dimaya is likewise inapplicable. The maximum potential sentence for Mr. Penaloza-Trejo's conviction was indeed enhanced under the INA. The INA sets a basic maximum sentence of two years of custody for illegal reentry. 8 U.S.C. § 1326(a). However, a number of enhancements apply. An illegal reentry defendant who has been convicted of an "aggravated felony" has a maximum possible sentence of 20 years. Id. at § 1326(b)(2). The INA "defines the term 'aggravated felony' by way of a long list of offenses, now codified at § 1101(a)(43). In all, that provision's 21 subparagraphs enumerate some 80 different crimes." Torres v. Lynch, 136 S. Ct. 1619, 1623 (2016). Only one of those offenses references the now-unconstitutional definition of crime of violence. 8 U.S.C. § 1101(a)(43)(F).

Throughout his briefing, Mr. Penaloza-Trejo identified his Washington drug convictions as the basis for his § 2255 claim. (Dockets 1-1 at p. 2-3, 17, 13 at p. 2. & 17 at p. 1). If those convictions are aggravated felonies, a question discussed below, see infra Section III.B, it is because they are drug trafficking offenses under § 1101(a)(43)(B), not crimes of violence under § 1101(a)(43)(F). Dimaya did not hold § 1101(a)(43)(B) unconstitutionally vague and so it has no bearing on Mr. Penaloza-Trejo's case.

### B. Drug trafficking aggravated felony

Two procedural issues bar the court's consideration of Mr. Penaloza-Trejo's claim that his Washington drug convictions do not qualify as aggravated felonies under the INA. First, his § 2255 motion is untimely as to this claim. Section 2255 allows movants only one year from the date of the judgment of conviction to file their claim, unless, as relevant here, the Supreme Court recognizes a new right forming the basis of the claim. 28 U.S.C. §§ 2255(f)(1), (3). Mr. Penaloza-Trejo's drug trafficking claim is not grounded in any new right created by the Supreme Court since his 2014 conviction. He instead argues the court erred in applying the 16-level increase for his prior drug trafficking aggravated felonies. Mr. Penaloza-Trejo could have raised this contention before this court and the United States Court of Appeals for the Eighth Circuit on direct appeal. (Docket 13 at p. 2). Mr. Penaloza-Trejo's judgment was filed by the court on December 4, 2014. (Docket 35). His 14 days in which to appeal elapsed on December 18, at which point his judgment became final. His § 2255 motion was filed on February 8, 2016—more than a year after the judgment became final. To the extent Mr. Penaloza-Trejo's motion is based on his drug trafficking claim, it is untimely.

Mr. Penaloza-Trejo also procedurally defaulted his drug trafficking claim because he failed to raise it on direct appeal. A movant "may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction." Jennings, 696 F.3d at 762.

9

Procedural default may only be excused if a movant shows both cause and prejudice or actual innocence. Bousley, 523 U.S. at 622. Mr. Penaloza-Trejo makes no showing on either front.

Even if the court were to overlook these procedural barriers and reach the merits of Mr. Penaloza-Trejo's drug trafficking claim, it could not grant § 2255 relief. In the context of alleged guidelines calculation error, a movant does "not have a cognizable claim under § 2255 where 'the same . . . sentence could be reimposed' if the court granted the requested relief." Cravens v. United States, 894 F.3d 891, 893 (8th Cir. 2018) (citing Sun Bear, 644 F.3d at 705). As in Sun Bear, Mr. Penaloza-Trejo's drug trafficking claim does not allege constitutional or jurisdictional error, but instead concerns a question of guidelines interpretation.[5] It is therefore not cognizable in the § 2255 context unless the alleged guidelines error increased Mr. Penaloza-Trejo's sentence beyond statutory limits. Sun Bear, 644 F.3d at 705.

Even assuming Mr. Penaloza-Trejo is correct and his drug convictions are not drug trafficking aggravated felonies under the INA—a finding the court does not make—his 57-month sentence is well within the statutory limits. Although Mr. Penaloza-Trejo contests whether his convictions are aggravated felonies, he

---

[5]Mr. Penaloza-Trejo characterizes his drug trafficking claim as a violation of his constitutional right to due process. (Docket 13 at p. 2). However, the substance of his claim is that his drug convictions do not fit within the definition of drug trafficking offense used in the 2014 version of U.S.S.G. § 2L1.2. This claim is analogous to the guidelines interpretation question the Eighth Circuit rejected as not cognizable in the § 2255 context in Sun Bear. 644 F.3d at 701-2, 4-5.

10

does not dispute he has been convicted of a felony. Any felony conviction raises the maximum penalty for illegal reentry to 10 years incarceration. 8 U.S.C. § 1326(b)(1) ("[A]ny alien . . . whose removal was subsequent to a conviction for . . . a felony (other than an aggravated felony) . . . shall be . . . imprisoned not more than 10 years[.]"). The court was well within its discretion to sentence Mr. Penaloza-Trejo to a 57-month sentence. His drug trafficking claim accordingly fails.

C. **Ineffective assistance of counsel**

In response to a question on a preprinted form § 2255 motion, Mr. Penaloza-Trejo states he did not appeal his conviction because his "counsel was ineffective." (Docket 1 at p. 5). These three quoted words are the sole reference to an ineffective assistance of counsel claim throughout Mr. Penaloza-Trejo's briefing. The Federal Public Defender did not raise any ineffective assistance of counsel claim on his behalf. The court discerns two possible ineffective assistance of counsel claims from Mr. Penaloza-Trejo's *pro se* and represented briefing: first, that his defense counsel failed to file a direct appeal against his wishes; and second, that his defense counsel failed to object to the 16-level enhancement under the 2014 version of U.S.S.G. § 2L1.2.

Mr. Penaloza-Trejo nowhere alleges he instructed his defense attorney to appeal his conviction and that she failed to do so. Under these circumstances, the court must conclude Mr. Penaloza-Trejo simply failed to state a viable ineffective assistance of counsel claim as it relates to his lack of a direct appeal.

11

"[T]he necessary elements of [an] ineffective assistance of counsel claim" grounded in an attorney's failure to file a requested appeal are "(1) [the movant] instructed her trial attorney to file and appeal and (2) he failed to do so." Witthar v. United States, 793 F.3d 920, 923 (8th Cir. 2015). "Because failure to file a requested appeal is deficient performance and because [the Eighth Circuit] presume[s] prejudice, these allegations alone generally are sufficient to warrant a hearing." Id. Mr. Penaloza-Trejo did not make these allegations and the court cannot make them on his behalf.

Mr. Penaloza-Trejo also does not allege his attorney was ineffective for failing to object to the application of the 16-level increase under U.S.S.G. § 2L1.2. To state a general ineffective assistance of counsel claim, a movant "must show that counsel's performance 'fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Adejumo v. United States, 908 F.3d 357, 361 (8th Cir. 2018) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Mr. Penaloza-Trejo does not make any allegations which would satisfy the Strickland standard regarding his defense counsel. See Strickland, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

12

The court is not unconcerned by the possibility Mr. Penaloza-Trejo was incorrectly subjected to a 16-level enhancement—especially an enhancement that has since been removed due to its severity—because his counsel failed to object. However, the court's "scrutiny of counsel's performance must be highly deferential" because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Under this deferential standard of review, the court cannot *sua sponte* conclude Mr. Penaloza-Trejo's counsel was ineffective for failing to object to the enhancement. The PSR noted Mr. Penaloza-Trejo was convicted of selling heroin to an undercover police officer. (CR. Docket 31 at ¶ 31). The court cannot easily find, as Mr. Penaloza-Trejo argues, that his conviction does not meet the definition of drug trafficking offense used by the 2014 version of U.S.S.G. § 2L1.2. (Docket 13). As a result, the court cannot find prior defense counsel ineffective for failing to object to a facially-correct enhancement, despite its severity.

**IV. Conclusion**

Mr. Penaloza-Trejo's legal claims regarding the validity of his sentence are unavailing or procedurally barred. To the extent he intended to raise an ineffective assistance of counsel claim, it is fatally undeveloped. There is no disputed factual question requiring an evidentiary hearing. Even accepting that prior defense counsel's ineffectiveness resulted in Mr. Penaloza-Trejo failing to appeal his conviction does not, without more, entitle him to relief. See United

States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014) (A district court may "deny an evidentiary hearing if . . . the petitioner's allegations, accepted as true, would not entitle the petitioner to relief[.]") (internal quotation omitted). If Mr. Penaloza-Trejo wishes to bring a fully-developed ineffective assistance of counsel claim, he is reminded that he must move the Eighth Circuit for permission to file a second § 2255 motion pursuant to 28 U.S.C. § 2255(h).

**ORDER**

For the reasons given above, it is

ORDERED that Mr. Penaloza-Trejo's § 2255 motion (Docket 1) is denied.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2255 Cases, the court declines to issue a certificate of appealability. A certificate may issue "only if the applicant has made a *substantial showing* of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (emphasis added). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if a "court could resolve the issues differently, or the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). Mr. Penaloza-Trejo has not made a substantial showing of the denial of a constitutional right.

Although the court declines to issue a certificate of appealability, Mr. Penaloza-Trejo may timely seek a certificate of appealability from the United

States Court of Appeals for the Eighth Circuit under Federal Rule of Appellate Procedure 22.  <u>See</u> Governing Rule 11(a); Fed. R. App. P. 22.

Dated July 12, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE